Good morning, Your Honors. May it please the Court. Thomas Saenz on behalf of the appellant, Mr. Puckett. I'd like to reserve five minutes for my co-counsel's rebuttal and I'll keep an eye on the clock. And are you all, you're not splitting issues, right? You're both gonna cover everything? Yes, Your Honor. Okay, thank you. Go ahead, please. This case is about a violent cell extraction committed by the defendants against Mr. Puckett, a pro se incarcerated litigant with a history of severe mental illness. At the heart of this appeal are three errors committed by the district court that we believe each independently warrant remand and reversal. First, the district court's refusal to allow four of Mr. Puckett's key witnesses from testifying at trial. Second, the court's denial of voluntary counsel for Mr. Puckett. And third, the court's dismissal of three viable claims at PLRA screening and summary judgment. I'd like to focus the majority of my time on the issues of witnesses and the right to counsel, but if Your Honors have any questions about the dismissed claims, I'm happy to address those as well. I guess I'd like to start at the end there. So the district court screened out the retaliation claim, and then when it went to summary judgment, the failure to protect claim, which appears by the record to rely on the same facts, was granted summary judgment on that after a failure of the plaintiff to oppose. So what good would it do if we find that there was no genuine issue of material fact on the failure to protect claim to find error in the screening out of the retaliation claim, since the plaintiff didn't add anything else to the record other than his own verified complaint? Your Honor, we believe that the First Amendment retaliation claim would go to different elements as established by this court in Rose v. Robinson. It would allow Mr. Puckett to further expand the record with respect to his protected conduct in filing a grievance. But what facts? I mean, both of the, what facts are we missing here in terms of it involved Ms. Lynch showing his record, allegedly showing his record to other inmates? So that is the core of both claims, right? Yes, Your Honor. They do rely on the same facts, but we believe that the issue here is that the PLRA screening standard allows for a much more liberal interpretation. Well, sure, but once they rely on the same facts, and if there's no genuine issue of material fact as to the failure to protect claim, why would there be a genuine issue of material fact or any claim that can move forward on the retaliation? Your Honor, while we do understand that if we understood Mr. Puckett's failure to protect claim to be properly dismissed at summary judgment, then yes, I would contend that your argument would make sense. But the issue here is that the district court improperly found summary judgment on Mr. Puckett's failure to protect claim by failing to consider his verified complaint as an affidavit that would present a genuine issue of material fact. What else was there beyond, I might ask your friend for why you might concede that, because I think it is maybe a trickier question, and we see that of necessity, a screened claim that depends on the same facts as a summary judgment claim, what we do there, whether it's harmless error or whatever. But as to the question of whether there's a genuine issue of material fact, the district court wasn't working with anything other than his verified complaint. Were there any third-party declarations that moved this issue forward? With respect to the failure to protect, the majority of Mr. Puckett's claim relied on his verified complaint. Well, does the minority of his claim rely on any other evidence other than his case? To clarify, Your Honor, the entirety of the claim relies on his verified complaint. And he didn't oppose summary judgment, and so the district court is just left with his own statement on both the retaliation and failure to protect. Yes, Your Honor, but we believe that this court has established that verified complaints can serve as an affidavit and did present a genuine dispute of material fact. It's unclear on the record whether or not any third party saw or heard the specific interaction that defendant or... Well, it's unclear. It's just not established at all that any third party did. It's only his speculation. With your respect, since it is a verified complaint, Your Honor, it serves the weight of an affidavit. But it can only serve as an affidavit if it's based on personal knowledge and specific facts. And even Mr. Puckett doesn't say that he actually saw Nurse Lynch showing his conviction documents to other inmates. Your Honor... All speculation on his part, right? What in there in his affidavit is actual personal knowledge that Nurse Lynch showed his conviction documents and told other inmates about his convictions? On page 384 of the record, Your Honor, Mr. Puckett begins by alleging that Ms. Lynch, defendant Lynch, came to his door on or about five days later after finding out about me finding Mr. Puckett trying to file an emergency 602 and showed his abstract of judgment to the inmates in the tier. This shows that there was clear, a clear conversation and a clear facts that were established in the record below. And I would also like to point out, Your Honor, that on page 383 of the record, Mr. Puckett, the form that Mr. Puckett submitted his complaint with presented or notified him that he would just submit the facts and would not make any legal arguments whatsoever. So we believe that here, this shows that there was clear factual basis for Mr. Puckett to establish a genuine dispute and material fact that should not have been ignored by the court at summary judgment. So, so the, the genuine dispute is Ms. Lynch categorically denies this and her declaration at summary judgment. And against that, we have the complaint where Mr. Puckett says that she showed my abstract of judgment to inmates on the tier. That's the, that's the dispute. Yes, Your Honor. And with respect to Mr. Puckett's First Amendment retaliation claim, we think that the difference here is showing that because Mr. Puckett, as a result of Ms. Lynch disclosing those allegations, the threats of violence and bodily harm that were inflicted on Mr. Puckett, that goes to a completely factual, different narrative and different claims on the First Amendment claim than it would for the failure to protect. And, and whether he was subjected to threats would have been based on his personal experience. Yes, Your Honor. And that those threats he alleges in the complaint and is verified. So it serves as an affidavit to establish a record on summary judgment that those threats were the result of Ms. Lynch's showing his offenses.  What was the, I guess to the, going back to the issues you'd hope to present on at the top, on the calling witnesses, you urge a due process analysis. What kind of liberty interest is, is at issue? Or what, what's the, what's the right that triggers the Matthews v. Eldridge balancing test from calling witnesses? I wasn't able to, to, to see where we would get that idea that that's a due process interest. Your Honor, we believe that this comes from this court's precedent in Barnett v. Norman, which establishes that the right to call witnesses is a fundamental right and especially should be afforded for pro se incarcerated litigants such as Mr. Puckett. Considering the informational asymmetries that were present in this case and the fact that Mr. Puckett was precluded from accessing the addresses of his inmates solely on his status as an incarcerated individual triggers this analysis that weighs in favor of Mr. Puckett. With respect to the Matthews v. Eldridge test, Mr. Puckett clearly had an interest in calling his witnesses and establishing a factual basis that would dispute the defendant's narrative of the cell extraction in which this district, the district court below recognized was a factual dispute. So let me ask you, we can only reverse under an abusive discretion standard if we think the exclusion more probably than not affected the verdict. And we have Mr. Puckett's own document saying, I believe my main two witnesses were paroled as my case is 10 years old. No witnesses may remember such a non-direct involvement incident. He says, my witnesses may be gone home or no recollection of incident as they're not a part of suit. And then he simultaneously says, you know, I, the plaintiff moved today for a trial date. Um, this case has been going on for a long time, eight years plus. Summary judgments have been filed to no avail. I respectfully request a trial trial order. So he was pushing for a trial date and knowing that his witnesses were not available and may not recall an incident that was so long ago. So how, how can we make that finding that it's more probably than not that these witnesses would have affected the verdict? And, and how should we view the fact that Mr. Puckett was demanding going to trial, even though he knew that his witness said had gone home or may not recall? With respect to the first point, your honor, um, we believe that this was clearly established in the trial court. Um, when in two respects, first on page 21 of the record, um, the district court clearly established two factual disputes that would be resolved at trial first, whether any of the defendants were malicious and sadistic in their application of force. And second, the extent and severity of the injuries at hand, Mr. Puckett's affidavits and the inmates purported to, um, create a factual dispute with regards to both factors, as they would have shown that Mr. Puckett, the defendants in this case applied, um, malicious force and, um, created, um, injuries that were far beyond what were presented by the defendants. Second, with respect to Mr. Puckett's request for trial, Mr. Puckett continued to request the appointment of counsel up until the month before trial. He was determined to have, um, counsel appointed for Mr. Puckett, given the fact that he established multiple times throughout the record that in previous cases, he had issues presenting this case before the court and, um, need a counsel in order to appoint, um, to rectify those issues. Um, so Mr. Puckett attempted up until the very last minute at the eve of trial to seek counsel. So we believe that this... No, but I mean, looking at his, looking at his own statement filing to the court, he says, no, there's no point in the continuous delay of trial. So he wanted to go forward with his trial, even though he knew his witnesses were not available or might not recall the incident. So how are we supposed to say, well, that was abuse of discretion then? We believe... To ignore that request of one of the litigants. We believe that this coupled along with the request for counsel and along with Mr. Puckett's, um, presentation of his history of mental illness, um, created a narrative that, um, showed that even though Mr. Puckett was requesting, um, to go to trial at that point, he was under the rec... Um, he was under the pretense that he may still be appointed counsel, um, to help him assist him specifically with respect to, um, presenting his case and to locate his witnesses. Um, I see that I'm out of time, so quickly to, if you're honest, I have no further questions. We ask that this Court, um, reverse and remand this case with instructions to appoint counsel considering this two-factor test under Wilburn v. Esconderon, um, to reinstate the dismissed claims and to, um... I have one last question. You can see that if Mr. Puckett's witnesses were not incarcerated, the defendants and the district court wouldn't have any obligation to locate those witnesses, correct? Your Honor, while they... Even if Mr. Puckett was pro se. While they wouldn't have the obligation, they would still have the requirement of using the traditional subpoena powers to locate, or to compel those witnesses to appear before the court. Um, we believe that two factors should have been addressed by this Court. But who would have found those witnesses' addresses to fill out the subpoena? Your Honor... Who is responsible to do that for witnesses who are not incarcerated? Mr. Puckett had a form that he could have filled out, and Mr. Puckett would have presented to the court that he was no longer able to locate these witnesses due to his incarcerated and pro se status. And at that point, the district court should have intervened and assisted in locating those witnesses using the traditional subpoena powers. The district courts... Anyway, that's fine. Thank you. Okay. Good morning, Your Honors. My name is Deputy Attorney General Jamil Ghanem, and I have the honor and privilege of representing the appellees Belawin, Lynch, Dason, Yalow, Varar, Belar, and Nurse Louise, both in the trial court at trial and also on this appeal. And here, Mr. Puckett's contentions on appeal are that, you know, the district court abused its discretion, but in order to show an abuse of discretion, it needs to show that the district court's decision was either illogical, implausible, or without support in inferences that may be drawn from the facts in the record. And here, there's plenty of evidence in the record to support the district court's decisions with respect to his request, denying his request for counsel, as well as his request for the attendance of various incarcerated witnesses. Mr. Ghanem, I'm interested in the two assignments of error over which we have de summary judgment issue, maybe working backwards, why doesn't the verified complaint act as an affidavit based on his personal witnessing of Ms. Lynch showing his offenses around the tier to contradict her declaration? Sure. So not just because Mr. Puckett signs, I declare under penalty of perjury that the foregoing is true and correct on his complaint doesn't necessarily mean every single statement in his complaint is admissible evidence, right? Because he, you know, I can declare. But just the parts that he's, he's attesting to under penalty of perjury based on what he's seen, and it seems like his complaint says that he saw Ms. Lynch show his offenses around. And, and that's where we would disagree. You know, his complaint does say, oh, Ms. Lynch came to my door and she talked to me, and he says, and then he goes on to say she showed this, she showed that, but he doesn't really indicate, you know, what documents that she had in her hand that he ever saw these documents, that he ever saw Ms. Lynch showing those documents to other people, how he could have seen it if he's in his cell. Well, he quotes, he quotes Ms. Lynch. Quote, unquote, three counts of rape by force, kidnapping, right? There's quotes around that, which suggests that that's something that he heard directly. Well, I thought that was just him quoting what his criminal history was. Well, I guess that's, that's the, but which way with a pro se plaintiff on summary judgment, we're supposed to, I think, cut him some slack. And where, where do you get authority that says, oh, if there is a verified complaint, only some statements are treated as affidavit statements and some are not. Because he signs his complaint as, I declare under penalty of perjury that the foregoing is true and correct. He doesn't say certain portions, certain statements. Correct. And my point to that is it's really just the summary judgment standard, right? For summary judgment, it has to, a tribal dispute has to be based on admissible evidence, just because, you know, you sign a document saying various allegations doesn't necessarily mean all of those allegations, you know, are made with personal knowledge, that they have foundation, that they're coming from, you know, authenticated documents, you know, I could, I could sit here and sign something that says I declare under penalty of perjury. Well, just the personal, of course, this is all you, all you have from Ms. Lynch too. So let's just take the, the, the two parts that are purportedly personal knowledge. He says, she said this, she did this. She says she didn't. Why isn't that a classical tribal issue? Well, because I think the issue with Mr. Puckett's complaint is he goes, you know, that, that step further and tries to attribute more, more to what Lynch did, you know, because there's no foundation for how he could have seen or observed Ms. Lynch showing anything to anybody. Well, is that in the record? I mean, I could imagine that, that, that there's maybe impossibility, right? If, if he was, if he was administratively segregated or so, but is there anything in the record that would rule out his ability to overhear her or watch her showing this around the tier? Well, and that's just it, right? There's nothing from Mr. Puckett indicating, you know, how he knows this. Oh, I overheard her saying this to somebody or even though I'm in my cell with one window and I can't see, you know, the whole tier, I can't see the whole hallway, I was able to look this way and see that there's just nothing there. It's just, it's kind of a blase allegation. Well, is there, is there anything from, from, so from, from the state's end, is there anything that would rule out his ability to overhear or see this? Well, nothing that would rule out his, you know, physical ability to do so, but, you know, speculation. But we have to, then we have to read this in the light most favorable to Mr. Puckett. Correct. But speculation still cannot raise a tribal dispute. And if what he's, you know, our point is what he's saying, there's really no foundation for it because he doesn't, there's nothing demonstrating how he observed any of what, you know, he's alleged to. And it goes the same with respect to, oh, these later things that happened to me, I know they happened to me because of what she did, but there's no evidence of that. You know, if you're going to rely on the motion for summary judgment standard, that might address the failure to protect claim, but that doesn't address the retaliation claim that was screened out. Sure. And I can, I can address the retaliation claim. At screening, why shouldn't this affidavit, this verified complaint be sufficient? Sure. And at screening, it again goes to the causation element, right? Because even a complaint, a complaint needs more than the, you know, defendant unlawfully harmed me accusation. There needs to be something, you know, taking it from the realm of possibility to plausibility, right? Well, I mean, so in a retaliation she learned that I filed a grievance and then she did this and the thing that she did is not something that we would generally consider to be within the realm of her general duties. Yeah. Well, with this, with the, the PLA screening and the retaliation claim, even assuming as true what he's alleged, there's still nothing tying what Lynch does at the Department of State Hospitals in Vacaville at one point in time to whatever other later events by unidentified people at unidentified times, what they're doing and that what they're doing is because of what she did. There's no, there isn't even an allegation kind of tying the two together. I know the guy tried to stab me because when he stabbed me, he said, ah, for Lynch. Right? There's nothing there. It's just maybe something happened later on, but how do we know that that has anything to do with, happened with another person at another facility at a completely different time? He doesn't even allege that. He just says, you know, she showed all my stuff on the tier and then five weeks later or five weeks later, I'm being threatened by unidentified inmates. He doesn't say who, doesn't say when, doesn't say anything with the attack. He doesn't say who or when. But, but it is, I mean, they're right. There's several claims here and this is, um, appears to be kind of one cohesive count. Um, what, do you have anything, uh, to help us with this question of, let's assume that it was unopposed. So we went into summary judgment on the same, assume that it's the same facts for failure to protect and retaliation and he doesn't oppose and the, the, um, district court grants summary judgment on the facts underlying the failure to protect, but has already screened out the retaliation. If we find that he's met the pleading standard, the lower pleading standard for the retaliation claim, what do we do with the fact that, um, he doesn't come forward with facts on the summary judgment? Um, I, they seem logically inconsistent, but, but I don't see an argument from you that suggests that there's somehow backwards law of the case or something going on here that would allow us to, um, that would require us to treat those together. Yeah. And, you know, because we always want to be, you know, as intellectually honest as possible. And if they're two distinct claims, they're going to be two distinct claims, even if they're relying on the same allegations. But we do understand there's, there's a bit of redundancy. And that's kind of our, our point when we're trying to say what is kind of happening here is they're taking kind of a second bite at the apple and saying, oh, we want to take these other things and morph it into another claim. But it's one the district court gave by screening out a claim premise on the same facts that he, uh, that, that, that also went to summary judgment. And the district court's, uh, screening of the retaliation claim was focused more on the cell extraction incident that, oh, there's nothing indicating that what happened at the conclusion of the cell extraction, the excessive force, that that was the product of retaliation. So I think that's what the district court's screening order on retaliation was. Um, but. So you're saying there was no district court ruling on the retaliation as to Ms. Lynch and the grievance and the showing the abstract of judgment to other inmates? It's, it's, it's screened it to find a failure to protect claim. And so to construe those same allegations to just, you know, make up another claim now on appeal, um, when he's already had the opportunity to litigate it, um, you know, it's, it's kind of, it's, it's redundancy. It's, it's inefficient. If Mr. Puckett, uh, had more allegations and more to argue and more to put in there about, you know, a, a retaliation claim or even more with respect to defendant Lynch in particular, he's always free to file, you know, a motion to amend his complaint, to add new allegations. There's, you know, several procedural devices he could have employed. Um, just to follow up with Judge Johnstone's point, what is the state of the evidence if we're looking at the retaliation claim? Is it the state of the evidence that existed at the time of the screening or is it the state of the evidence at the time of judgment? And can we consider basically the evidence at summary judgment? I think for the retaliation claim, it would still just be looking at the, the state of the evidence from the screening. Um, but then again, like we put in our papers and like we have here, you know, even though we're reviewing the judgment, which would include all of the subsequent, um, rulings and evidence. As to the PLRA screening. Well, yeah, cause the, the district court or sorry, the court of appeal. I mean, you have the whole judgment, right? Um, so you can look at everything in the record and making that determination. But with respect to Mr. Puckett's retaliation claim, there was still nothing pushing that pushing over the line of plausibility with respect to Lynch or tying the actions of any, any subsequent actor because of respondent Lynch. There was no allegation there to do it. And that's why. So, so we'd be, we'd be, it sounds like we do something like look at the record on summary judgment, but under the standard for pleading a claim. Uh, no, I don't think you would look at the additional evidence I'm talking about just strictly, you know, on the allegations, the face of his complaint, the allegations of his complaint. It's the same evidence at both stages because there's nothing new on. So yeah, he didn't submit anything additional. And the, the complaint itself, you know, fails to say the valid retaliation claim because of the causation that is, you know, so insufficient and lacking from his allegations. So I am looking at the, the district court's screening order, and it says the only mention of possible retaliatory conduct in the complaint is that plaintiff alleges the defendants attacked him in retaliation for biting one of them and making them do paperwork. So you're saying at that point, it was Mr. Puckett was not even raising this retaliation claim based on, um, That's correct. There was, it's being asserted now on appeal that he has some retaliation claim against Lynch that was improperly screened out. But when the court looked at the retaliation claim, they were thinking of retaliation in the context of, oh, him being, you know, the allegations of excessive force, which now we've, we've gone, we've gone through trial and he was not subjected to excessive force at all. Why isn't, um, the delay in treatment sufficient to, um, uh, the medical indifference or yes, uh, as to nurse Lewis, right? So we have the incident where there's the alleged excessive force and Mr. Puckett claims, oh, after the incident, I had a bloody lip, a bloody nose and, and these facial injuries, and he is seen by the nurse. There's no dispute that he's, you know, seen and evaluated by the nurse, the nurse, you know, sees him from, you know, according to her testimony, head to toe. Um, and at summary judgment, she kind of said the same thing in her declaration and in her medical report, you know, uh, she examined him and he's only, only found him to have one particular, like one minor issue. And then she says, you know, I wrote it down, I noted it and I notified the physician. So for Mr. Puckett and his, you know, dispute, uh, it's at best, you know, oh, you know, I have a bloody nose. No, you don't. That's, I'm, you misdiagnosed me. That's medical negligence. That's not, we're not even close to the threshold of deliberate indifference. There's no facts or evidence that she, you know, drew a sub, you know, drew the inference of a substantial risk of harm to him and then completely disregarded it. He's just saying I had something and she completely missed it, uh, which is, you know, a misdiagnosis or medical negligence at best. Uh, and then, you know, if we, if we carry that all the way, you know, through, uh, uh, through trial evidence at trial and, you know, the jury found that he wasn't even subjected to excessive force. So whether he had those injuries or not, you know, it's never even established. Um, but as to nurse, uh, Lewis, I mean, uh, in order to have deliberate indifference with her course of treatment of evaluating him and assessing him and notifying the doctor, there has to be, uh, you know, something showing that what she did was completely medically unacceptable under the circumstances and evaluating him, assessing him and notifying the doctor. There's no evidence that that it was medically unacceptable under the circumstances. Uh, and the contention that I had these injuries and she completely botched it and missed it is at best, you know, uh, an allegation of a misdiagnosis or medical negligence. It does not approach the threshold of deliberate indifference. And I apologize. I think I might've gone over my time. Okay. Thank you. Thank you, Your Honors. Good morning, Your Honors. Joseph Mascovich appearing for the appellee, um, Amici Agbole. Uh, the only two issues that concern my client have to do with the denial of counsel and the, um, rulings regarding, uh, Mr. Puckett's efforts to have incarcerated witnesses, um, appear for trial. As has been commented on so far this morning, the abuse of discretion standard applies. And if you look at all of the orders in total that the, uh, magistrates and the district court judge issued below, they clearly set forth the controlling law on each of these issues and the rulings that they made are grounded in... How should we view the fact that the defendant's witness list had the same witnesses, Burton, Dixon, Torres, and Terrell? That the district court excluded Mr. Puckett from calling? The only reason that the district court excluded those witnesses was that, uh, Mr. Puckett had not complied with the procedures that were clearly laid out for having the court issue a writ of habeas corpus, uh, testificate, uh, testif... I'm sorry, I'm blowing the Latin term, but to have those incarcerated witnesses appear for trial. Um... But if they were already on the defendant's witness list, well, you know, why not allow them to testify? Well, I, I, I, again, it wasn't a question at that point of, of whether the witnesses could, could testify and in fact had personal knowledge. And that's in fact, you know, relatively common for a defense attorney to list witnesses that the plaintiff intends to call just as a safeguard. But in this particular case, again, Mr. Puckett did not fulfill the carefully explained standards and guidelines for having the court arrange for the appearance of these witnesses at trial. So, and also with respect to the appointment of counsel issue, again, the law is very clear on this. You, you have to have exceptional circumstances. Well, what else would be needed to show exceptional circumstances? Uh, here, he's having trouble getting the witnesses. Of course, this becomes in the basis of, um, the grant of summary judgment against him, um, he is being moved around, I don't know how many different, um, institutions he's moved around to while he's trying to litigate this case. What, what's missing from this that the other exceptional circumstances cases have? I think what's missing, Your Honor, is some indication that the, that the issues in the case were more complex than the usual run of, run of the mill, you know, prisoner litigation or pro se litigation. I mean, this is essentially just a tort case. It's not a case that involves, you know, technical questions of law. Well, I guess it, this may take you away from, uh, your, uh, the claims against your client, um, but we've just had quite an extensive colloquy with your, your friend, um, about what the district court, what claims the district court, uh, was screening, how that impacts summary judgment. It does seem like the absence of an opposition at summary judgment, um, again, maybe on the failure to, uh, or on the retaliation claim, um, confused, uh, the record in a way that, um, counsel might've helped with at the time. Again, Your Honor, I, I don't think that's a circumstance that rises to an exceptional level to the point where the court needs to, you know, appoint counsel to represent a pro se litigant. I would also, again, going back to, I believe it's a, that's a point that Judge Koh made earlier, that the last time that Mr. Puckett, uh, moved for an appointment of counsel was shortly before trial and his application or his motion made clear that at that point, he didn't want the trial to be delayed. He, he didn't want to cause any delay. And at that point, appointment of counsel would have certainly caused a delay. Are we limited to, uh, what are we reviewing? Are you asserting that we're limited to only reviewing the final request and denial of counsel? That's not my argument, but, you know, again, throughout the, you know, for, from one motion to the next that he filed through the course of this case, that was obviously pending quite a while, he repeatedly went back to the same issues, talking about his mental condition, um, you know, that was the main thing, talking about his lack of access to, you know, legal materials. Basically he was talking about matters that are inherent in pro se status, especially for an incarcerated prisoner. He wasn't raising these additional issues about the complexity of the issues. He essentially said, I would be able to be, I would be better able to articulate my arguments if I had counsel. But again, that's always going to be true for a pro se litigant. Um, I've exceeded my time. So unless the court has any additional questions for me, I'll submit. Thank you. Good morning. May it please the court, Paul Rock for Appellant Puckett. I just want to quickly address. You know, I want to talk about the, the retaliation. Yes. So I went back and looked at the complaint. So the statement of claim ER 383 is only talking about the cell extraction and the punched, uh, after he, uh, bit Mr. Agboli and that as a result of the attacks on him from the cell extraction incident, he feels homicidal. He hears voices. And then he says, uh, the nurse Louise didn't lie in a coverup misconduct, several John and Jane Doe's watching misconduct, cheering it on, failing to protect me or intervene. So it's failing to protect me during the attack from the cell extraction, even while I scream for help for 11 days, they denied medical care to this day. I can't properly see out of my right eye. So that is what he states is his claim. And then the next section is the relief. It says, what specific relief do you want? And in it, that's when he says, Ms. Lynch showed my abstract of judgment to inmates on the tier. And he says, my group that I run with told me when I'm not EOP, I have to go into protective custody, but CDCR won't let me go from general population mainline to public, uh, protective custody, sensitive, um, inmate. So the Lynch, um, abstract of judgment allegation has to do with his request for protective custody. It, I, I also looking at this as a district judge, wouldn't have known that he's making a retaliation claim against Ms. Lynch. He doesn't even say in this section, anything about, she did this to me because I filed a grievance, right? She, I mean, look at page 384. And so then when it goes on about, um, you know, Ms. Lynch complained of crucifying pain. But Louise told me, you know, fuck my medical treatment or words to that effect. And since I'm going to file a complaint, the retaliation about any complaint seems more about nurse Louise, right? He doesn't allege anything about Lynch knowing that there's going to be a complaint or a grievance or even specify when she allegedly showed the abstract of judgment to inmates on the tier. It's not at all tied to any filing of a grievance. And I, you know, if we look on and he says, you know, I want $2,500 against John and Jane Doe for failure to intervene and protect. And that failure to intervene and protect is all talking about the cell extraction attack, because that's the language he uses in the statement of his claim. He says there were Jane and Joan Doe's watching the attack on me. They failed to protect me. They failed to intervene. I want $2,500 on them. So I don't even see a retaliation claim here against Lynch. Why don't you respond to that? Well, first, Your Honor, I just want to point out that the fillable form that Mr. Puckett filed this complaint on instructs pro se litigants not to make legal arguments and just simply to state what occurred. Right. But he doesn't put anything about Ms. Lynch in the statement of his claim. He only puts it in the section that states what is the relief, the specific relief that you want. And the relief he wants after talking about Lynch is I want to go into protective custody. I want to be a sensitive inmate versus a general population mainline inmate. So how would the district court know that there was a retaliation claim here? Well, the district court did read in a retaliation claim. Right. They said the only mention of possible retaliatory conduct in the complaint is that Plaintiff alleges the defendants attacked him in retaliation for biting one of them and making them do paperwork, because that is what he says. They said under his statement of claim, after the completion of cell extraction, I was attacked. One of them stated for biting one of us, making us do paperwork. Take this. Or words to that effect.  Puckett, in the same document, Mr. Puckett does talk about after learning about him filing a grievance, Defendant Lynch showed his abstract judgment to inmates on the tier. This court in Waddeson has held that a chronology of events is sufficient to infer causation. So I think we can infer here, particularly at the liberal screening stage, that Mr. Puckett was alleging that Lynch retaliated against him for filing a grievance. Is the second page where the alleged retaliation claim occurs is on a new sheet of paper that appears to be numbered differently. But it is a bit of a puzzle because there's nothing that suggests that which heading, ER 384, page five of the complaint belongs to, it doesn't. Well, it just doesn't. A lot of Mr. Puckett's filings are difficult to understand. And Your Honor, that goes to the critical need for Mr. Puckett to have been represented by a lawyer throughout this pretrial phase. The record shows he's deeply, severely mentally ill. He brought this lawsuit from California Medical Facility, which houses inmates who cannot survive in the general prison population. He was in no shape to represent himself, and the court abused its discretion. Well, it looks like he handwrote the page numbers on the bottom, page five, page six. So it's clear that this is part of the relief section and not the statement of the claim section. I see that, Your Honor. I think, I'm not sure Mr. Puckett would have understood that distinction. And given that the form simply tells litigants to state what happened without making legal arguments, I think the court should have used its discretion to read this document together as a whole. I guess you see our problem, the fact that he's ably represented on appeal doesn't quite get at the situation the district court was in. I think Judge Koh's question suggested, to me at least, that in the frame of mind of the district court, what else were they supposed to do? I mean, I guess another way of getting at this is even if we assume that there was a claim and we disagree with you on the appointment of counsel, what could Mr. Puckett have added between the screening out of the retaliation claim and summary judgment that would have been any different than what he was obliged to add for the failure to protect? What new evidence could he have added, Your Honor? Yeah. Well, I think if he had unified the relief and allegations section, that would have been enough to demonstrate a genuine dispute of fact, similar to the failure to protect claim, Mr. Puckett alleged, based on personal knowledge, that Lynch showed his abstracted judgment to other inmates in the tier. Lynch denied it. That is as... So it would be the same affidavit, which is his complaint. Yes, Your Honor. That would be the same. There'd be nothing new. I don't believe anything new would have been necessary to establish a dispute of fact. Is there, I mean, where would we look anywhere in the district court record to understand, either from the arguments of the parties or the district court itself, that anyone understood page five to be a statement of claim as opposed to remedy? Because arguably the district court didn't. So did the state understand that at summary judgment? I believe the state did cite, and that would be, if I could find the citation, I apologize, in the further excerpts from 17 and 18, I believe the state cites to Mr. Puckett's document. I believe that indicates their understanding that this was a sort of a unified document. No, I guess we're asked, or at least I'm interested in what indicates that anyone, even Mr. Puckett, because after he got this screening order, he never came back and said, oh, excuse me, I'm also making a retaliation claim against Nurse Lynch. So where in the record, once that got, you know, whether it got, it looks like it may not have even gotten screened out because the district court didn't even know that it was being raised. No one in that screening order was 2016. The trial was 2023. So no one in the intervening seven years said, excuse me, there's still this retaliation claim outstanding, pending against Nurse Lynch. I certainly don't think Mr. Puckett was equipped, given his status as a mentally ill pro se litigant, to identify that. Now, the district court, in its mention of retaliation at screening, discusses that the only mention of possible conduct of protected speech was Mr. Puckett biting the defendants. There, it didn't identify Mr. Puckett's grievance as protected speech, which it should have to proper defense. But I guess read as a whole, none of the declarations, none of the witnesses, he does not appear on the face of all of the documents that he has submitted to the court at every stage of this case to be attempting to make out the retaliation claim that you argue on appeal he brought. None of the witnesses, there are no, there are no, by the time it gets to the witness list, they are all people who are referring back to the declaration, as your friend said, about the extraction. Nothing, no attempt to establish any record on a retaliation claim. Well, Mr. Puckett himself served as a witness to that claim, and he may not have had other witnesses, given that the central allegation there is that the abject of judgment placed him at risk of attack by other inmates. So Mr. Puckett himself. Well, all these people witnessed his extraction and none of them, I mean, was he at maybe, you can help me here, whether he was at a different facility at the time the alleged retaliation occurred, none of them witnessed Ms. Lynch's alleged retaliation? Mr. Puckett was transferred numerous times, so it's not clear exactly who was where. Mr. Puckett does allege that an attack occurred at CSP Sacramento, which is. No, I'm setting that aside. The basic problem is we have the, again, this goes to his fear of attack by other inmates, but in taking it at, pulling up the complaint here, five days later, if he was in the same place five days later and he has this long list of witnesses who'd witnessed the extraction, but doesn't recur to any of them to witness the alleged retaliation, why isn't the most sensible conclusion that he's not bringing a retaliation claim at all? He mentioned the act of retaliation in his verified complaint. That is the capacity in which he brought the claim. He has very little capacity otherwise to represent himself, and I think that likely explains the subsequent lack of mention. But he got so many declarations from other inmates at the mental health facility where the cell extraction took place, but he never got any on this issue of showing the convictions. And then he says, word of mouth from that showing of my abstracts of judgment somehow got to another prison in a totally different city in a different location, and that's where I got attacked because of that. So he could have gotten any other corroboration about this showing of abstracts of judgments because he got so many declarations already from the same individuals. And if he's claiming it basically is happening at the same time frame, wouldn't they have witnessed that as well? Mr. Puckett failed in many steps of this litigation. What he did do is describe a first amendment retaliation claim in his complaint, and that is what we're evaluating here. And yet the district court, in addressing the failure to protect, did treat Ms. Lynch's alleged retaliation as an allegation at ER 60. As to defendant Lynch, plaintiff further alleges that she showed my abstract of judgment. And so the district court, in the end, did understand it to be a claim that he was bringing, at least at summary judgment. Yes, Your Honor. Thank you. Thank you very much. Thank you all counsel for the helpful arguments. This case is submitted. We are adjourned for the day. And for our visitors, Judge Johnson and I will do a short Q&A first, and then our law clerks will come and speak with you as well. Okay. So thank you. We are adjourned.
judges: HURWITZ, KOH, JOHNSTONE